(57 South. 283.)

No. 18,616.

ALEXANDER v. NEW ORLEANS RY. & LIGHT CO.

(Jan. 15, 1912.)

*(Syllabus by the Court.)*

1. STREET RAILROADS (§ 70*)—STREET CARS—SEPARATE ACCOMMODATIONS.

Act No. 64 of 1902, requiring street railway companies to provide separate accommodations for the white and colored races, is properly interpreted to mean that the position of the movable partition in a car may be changed as occasion may require; that is to say, should it be found that, at a particular time, there is more space assigned to the one race and less to the other than is needed for the accommodation of the respective classes of passengers, the officer in charge of the car may move the partition to meet that condition and may require the passengers to move their seats accordingly. But, where a passenger has found a seat in the compartment assigned to his race, the officer has no right, by moving the partition, to put him in the wrong compartment, when there is no seat to be found in the compartment thus newly established for his race.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 70.*]

2. CARRIERS (§ 283*)—CARRIERS OF PASSENGERS—OBLIGATION.

The obligation of a carrier of passengers is to carry them safely and protect them from insult and injury, and a fortiori, from injury at the hands of its own officers and employés.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1119–1124; Dec. Dig. § 283.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Joseph Alexander against the New Orleans Railway & Light Company. Judgment for plaintiff, and defendant appeals. Amended and affirmed.

George W. Flynn, for appellant. Dart, Kernan & Dart, for appellee.

Statement of the Case.

MONROE, J. Plaintiff sues for damages resulting from an assault committed upon him by a street car conductor, in defendant's employ, whilst he (plaintiff) was a passenger on the car.

Plaintiff, who is a negro longshoreman, boarded a Tulane Belt car, at Carrollton, at about half past 7 o'clock in the morning, in order to get to his work. All the seats were then occupied; the two rear seats on each side being occupied by negroes, and the screens being in front of the rear cross-seats. At Calhoun street a negro woman vacated one of the cross-seats and plaintiff took her place.

A few squares down, the other occupant of the cross-seat left the car, whereupon the conductor moved the screen to the back of the seat and told plaintiff to get up, at which plaintiff demurred, as, with the change in the position of the screen, there was no vacant seat in that part of the car assigned to people of his race. He, however, vacated, but, retiring to the platform, he informed the conductor that he had wronged him and that he would report the matter to the company, and he proceeded to take the conductor's number and the number of the car. The conductor then struck him in the face with his bell punch, cutting a gash an inch long, from which the blood flowed freely, and, when the car reached Canal street, plaintiff got off, returned to his home and changed his shirt, and then went to the office of the defendant, where he was referred to the company's surgeon, who dressed his wound. He testifies that his face was bandaged for two weeks and remained disfigured for some three weeks more, so that he did not like to go to his work. We, however, find no sufficient reason, arising from his wound, for such an extended holiday. Defendant produced one witness who tells a story somewhat different from the foregoing, but he also states that, when the conductor requested plaintiff to vacate his seat, the screen was in front of him, and, upon the whole, our conclusions, as to the facts, are as above stated. Plaintiff says that he was earning from $6 to $10 a day, and that he expended $15 or $20 for "medicines" on account of his injury. The evidence shows that there were two negro men standing on the platform at the time of the occurrence in question, and possibly a few white men, for whom there were no seats. There was judgment in the district court in favor of plaintiff awarding him $50, and he has appealed and complains that the amount is insufficient.

129 LA.—31

## Opinion.

[1, 2] The law (Act No. 64 of 1902) requires street railway companies, carrying passengers, "to provide equal, but separate, accommodations for the white and colored races, by providing two or more cars, or by dividing their cars by wooden or wire screen partitions," and further provides that:

"No person * * * shall be permitted to occupy seats in cars or compartments other than the ones assigned to them on account of the race they belong to.

"Sec. 2. * * * That the officers of such street cars shall have the power and are hereby required to assign each passenger to the car or compartment used for the race to which such passenger belongs. Any passenger insisting upon going into a car or compartment to which, by race, he or she does not belong shall be liable to a fine * * * or * * * be imprisoned, * * * and any officer of any street railway insisting on assigning a passenger to a car or compartment other than the one set aside for the race to which said passenger belongs shall be liable to a fine * * * or * * * imprisonment; and, should any passenger refuse to occupy the car or compartment to which he or she is assigned by the officer of such street railway, said officer shall have the power to refuse to carry such passenger on his car. * * *"

Defendant, with a view of complying with the law thus quoted, has provided its cars with wire screen partitions, which can be moved so as to give the large and smaller spaces in the cars to the white or colored people, as occasion may require, and we think the law is properly interpreted to mean that the position of the partition may also be changed as occasion may require; that is to say, should it be found that, at a particular time, there is more space assigned to the one race and less to the other than is needed for the accommodation of the respective classes of passengers, the officer in charge of the car may move the partition to meet that condition, and may require the passengers to move their seats accordingly. But where, as in this case, a passenger has found a seat in the compartment assigned to his race, the officer has no right, by moving the partition, to put him in the wrong com-

partment, when there is no seat to be found in the compartment thus newly established for his race; and still less has the officer the right to assault the passenger who complains of such treatment. The obligation of defendant is to carry its passengers safely and protect them from insult and injury, and, a fortiori, from injury at the hands of its own officers and employés. We concur with plaintiff in the view that the amount awarded him is insufficient.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by increasing the amount for which defendant is condemned to $250, and, as thus amended, that said judgment be affirmed. Defendant to pay all costs.